FILED
2017 May-03  PM 03:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 5

4/21/2017 2:26:21 PM
Chris Daniel - District Clerk Harris County
Envelope No. 16597384
By: Joshua Bovell
Filed: 4/21/2017 2:26:21 PM

**CAUSE NO. 2016-75388**

| | | |
|---|---|---|
| **MID-WEST STEEL BUILDING COMPANY, A DIVISION OF NCI GROUP, INC.** | § <br> § <br> § <br> § | **IN THE DISTRICT COURT OF** |
| **V.** | § <br> § | **HARRIS COUNTY, TEXAS** |
| **CORNERSTONE WORD OF LIFE CHURCH** | § <br> § | **269TH JUDICIAL DISTRICT** |

**DEFENDANT CORNERSTONE WORD OF LIFE CHURCH'S**
**MOTION TO DISMISS ON GROUNDS OF FORUM NON CONVENIENS**

Defendant Cornerstone Word of Life Church ("Cornerstone Church" or the "Church") files this Motion to Dismiss on grounds of *forum non conveniens* and asks that the Court dismiss the suit because a court outside Texas is an available and more appropriate forum. Plaintiff Mid-West Steel Building Company, a Division of NCI Group, Inc. ("Mid-West Steel"), has filed suit in Harris County, Texas against Cornerstone Church, an Alabama non-profit corporation that operates solely in Alabama, based on an allegation that Cornerstone Church did not pay for materials ordered in Alabama and used in the construction of a church in Alabama. The Circuit Court of Madison County, Alabama is a more appropriate forum for resolution of this dispute and this motion to dismiss for *forum non conveniens* should be granted.

**I.**
**FACTUAL BACKGROUND**

1.     Cornerstone Church has no connection with the State of Texas.[1]  Cornerstone Church is an Alabama non-profit corporation and does not operate in Texas.[2]  Cornerstone Church has always resided and operated in Alabama.[3] Cornerstone Church is not registered in

---

[1] Declaration of Pastor Mark Garver (the "Garver Declaration") attached as Exhibit A.
[2] *Id.*
[3] *Id.*

1

Texas, does not own any property in Texas, and does not have any offices, employees, agents, or representatives in Texas.[4] Cornerstone Church has never been a party to a lawsuit in Texas.[5]

2.      Cornerstone Church worked with Churches by Daniels, a contractor located in Broken Arrow, Oklahoma, to construct new church facilities in Madison, Alabama.[6] Churches by Daniels identified Mid-West Steel as a company that could supply certain materials for use in the construction of new church facilities in Madison, Alabama.[7]

3.      This dispute has its genesis in defective materials supplied by Mid-West Steel in connection with the construction of a building in Madison, Alabama prior to the building referenced in Mid-West Steel's petition.[8] Mid-West Steel provided Cornerstone Church with defective insulated exterior panels for the building in Alabama.[9] According to Mid-West Steel, the defective panels came from Metl-Span,[10] a wholly-owned subsidiary of NCI Group, Inc.[11] The panels were defective in that the exterior of the metal panels delaminated in several locations from the foam cores, a phenomenon that Metl-Span referred to as blistering.[12] Cornerstone Church was informed that the delamination was caused by a chemical reaction between the glue and the foam used at a particular manufacturing facility and this issue had been observed at other locations throughout the United States.[13] Further, Mid-West Steel and Metl-Span were aware of the delamination issue prior to the sale of the defective panels to

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] Declaration of Pastor Robert Conover (the "Conover Declaration") attached as Exhibit B.
[9] *Id.*
[10] *Id.*
[11] *See* NCI Building Systems, Inc.'s Form 10-K for the fiscal year ended November 1, 2015, available at https://www.sec.gov/Archives/edgar/data/883902/000088390215000009/ncs2015110110-k.htm.
[12] Ex. B, Conover Declaration.
[13] *Id.*

2

Cornerstone Church, but failed to inform Cornerstone Church of the problem.[14] Cornerstone Church attempted to resolve the issues related to the defective panels with Mid-West Steel, but Mid-West Steel refused to provide a workable solution or to replace the defective goods despite sending Mid-West Steel representatives to Alabama to inspect the panels.[15]

4.      While the issue with the defective panels was pending, Churches by Daniels advised Cornerstone Church to order additional materials for a second building from Mid-West Steel as a show of good faith and Cornerstone Church's trust in Mid-West Steel to resolve the issue with the defective panels.[16] Accordingly, a form purchase order for the materials was sent to Cornerstone Church in Alabama, and Pastor Mark Garver signed the purchase order in Alabama.[17] Certain materials were then delivered to the project site in Madison, Alabama.[18] The purchase order indicates the materials were shipped to Madison, Alabama from Elizabethton, Tennessee.[19]

5.      Cornerstone Church withheld payment on the second building in order to offset a portion of its damages on the first building, and Mid-West Steel filed suit for payment on the second building in Harris County, Texas despite the fact that Harris County has little to no relation to the controversy between the parties.[20] Cornerstone Church filed suit against Mid-West Steel and Metl-Span in the Circuit Court of Madison County, Alabama for the defective panels because Alabama is a more appropriate forum for this dispute.[21]

---

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] Ex. A, Garver Declaration; Ex. B, Conover Declaration.
[18] Ex. B, Conover Declaration.
[19] Plaintiff's Original Petition at Exhibit A, p. 1, a true and correct copy of which is on file with this Court and incorporated by reference herein for all purposes.
[20] *See* Plaintiff's Original Petition.
[21] Complaint filed in Circuit Court of Madison County, Alabama on February 17, 2017 (the "Complaint"), a true and correct copy of which is attached hereto as Exhibit C.

## II.
## ARGUMENT & AUTHORITIES

6.      "The central focus of the *forum non conveniens* inquiry is convenience." *Brenham Oil & Gas, Inc. v. TGS-NOPEC Geophysical Co.,* 472 S.W.3d 744, 766 (Tex. App.—Houston [1st Dist.] 2015, no pet.). "The doctrine allows a court to dismiss a claim based on practical considerations affecting litigants, witnesses, and the justice system." *Richardson v. Newman,* 439 S.W.3d 538, 543 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

7.      "A forum non conveniens determination is 'committed to the sound discretion of the trial court.'" *Crum & Forster Specialty Ins. Co. v. Creekstone Builders, Inc.,* 489 S.W.3d 473, 479 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (quoting *Quixtar, Inc. v. Signature Mgmt. Team, LLC,* 315 S.W.3d 28, 31 (Tex. 2010)). To determine whether dismissal is appropriate, a trial court should apply the test that the United States Supreme Court established in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947). *Benz Group v. Barreto,* 404 S.W.3d 92, 96 (Tex. App.—Houston [1st Dist.] 2013, no pet.). "First, the party seeking dismissal must demonstrate that the proposed alternate forum is available and adequate." *Id.* If the proposed alternate forum is available and adequate, then the court should consider "the set of private and public interest factors" set out in *Gulf Oil. Richardson,* 439 S.W.3d at 543. And "if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Benz Group,* 404 S.W.3d at 97. Further, it is not necessary for the movant to prove each of the private and public interest factors in order for the court to find dismissal proper. *Quixtar,* 315 S.W.3d at 33.

8.      In this case, the Circuit Court of Madison County, Alabama is an available and adequate alternate forum, and the private and public interest factors weigh heavily in favor of

4

dismissal of the present action. Therefore, this case should be dismissed on the grounds of *forum non conveniens*.

**A.      Alabama is an Available and Adequate Alternate Forum.**

9.      "A viable alternative forum exists when the entire case and all of the parties can appear within the jurisdiction of the proposed forum." *Id.* The Circuit Court of Madison County, Alabama is such a forum. Cornerstone Church is an Alabama non-profit corporation[22] and has already submitted to the jurisdiction of the Circuit Court of Madison County, Alabama by filing suit in that forum.[23] Mid-West Steel is a division of NCI Group, Inc.[24] NCI Group, Inc. is a Nevada corporation that has obtained a certificate of authority to transact business in Alabama,[25] was granted Alabama Entity ID Number 937-710 by the Alabama Secretary of State,[26] and maintains a registered agent for service of process in Alabama.[27] Therefore, NCI Group, Inc. can appear within the jurisdiction the Circuit Court of Madison County, Alabama, which means an available and adequate alternate forum exists.

**B.      The Private Interest Factors Weigh in Favor of Alabama.**

10.      In determining whether another forum is more appropriate, a court should consider the following factors regarding the litigant's private interests: (1) the relative ease of access to sources of proof; (2) the cost of obtaining the presence of witnesses; (3) the availability of compulsory process for attendance of unwilling witnesses; (4) the possibility of a view of the premises; and (5) any other practical factors that make trial expeditious and inexpensive. *Benz*

---

[22] Ex. A, Garver Declaration.
[23] Ex. C, Complaint.
[24] Plaintiff's Original Petition at ¶ 3.
[25] NCI Group, Inc.'s Application for Certificate of Authority of a Foreign Corporation to Transact Business in Alabama, a true and correct copy of which is attached hereto as Exhibit D.
[26] State of Alabama – Change of Registered Agent of NCI Group, Inc., a true and correct copy of which is attached hereto as Exhibit E.
[27] *Id.*

5

*Group*, 404 S.W.3d at 98. As is discussed in detail below, these factors weigh in favor of dismissing this case.

### (1)    The Primary Sources of Proof Are in Alabama.

11.    Here, the primary sources of proof are located in Alabama. Cornerstone Church does not have a presence in Texas and its pastors and board members are located in Alabama.[28] The new facility that incorporated the materials at issue is located in Alabama, and the building that incorporated the defective materials is also located in Alabama.[29] The key witnesses for Cornerstone Church involved in the construction of the buildings at issue that observed the blistering in the defective panels are located in Alabama, and Cornerstone Church intends to hire an Alabama based contractor to replace the defective panels.[30] If the case were tried in Harris County, and to the extent that doing so would even be possible, Cornerstone Church would incur significant expense in shipping the key evidence, including the defective materials, to Texas for use in the defense of Mid-West Steel's claims.  The building site is in Alabama. The materials at issue are in Alabama. The key witnesses from Cornerstone Church are in Alabama. It is simply unreasonable and unjust to litigate this dispute in Texas. Accordingly, this factor weighs in favor of an Alabama forum.

### (2)    Sending Willing Witnesses to Texas is Unnecessarily Expensive.

12.    All of Cornerstone Church's key witnesses with knowledge of the transactions and the construction projects underlying this case reside in Alabama.[31]  Such key witnesses include Pastor Mark Garver, who signed the purchase order, and the individuals involved in the construction of the buildings at issue, who observed the blistering in the defective panels,

---

[28] Ex. A, Garver Declaration; Ex. B, Conover Declaration.
[29] *Id.*
[30] *Id.*
[31] *Id.*

6

including Pastor Robert Conover.[32]   Additionally, to the extent that repair or replacement of the panels is necessary, Cornerstone Church will hire an Alabama based contractor to address repair or replacement of the defective panels, and the contractor's testimony with respect to the defects observed in the panels and the repair or replacement methods will be critically important.[33]   If this matter proceeds to trial in Harris County, Cornerstone Church's witnesses will have to travel to Houston to appear for hearings, attend any requested corporate representative depositions, and participate at trial.  Cornerstone Church's attorneys will similarly have to travel to Alabama for the deposition of any witnesses in Alabama. The witnesses and Cornerstone Church will be forced to incur significant travel expenses, including costs associated with transportation, lodging, food, and time away from work. They will also not be able to participate in regular church activities and community outreach projects.  Maintaining a Harris County forum will require Cornerstone Church to expend its limited church funds to defend a controversy that would be more economically and efficiently tried in Alabama.  For these reasons, this factor weighs in favor of an Alabama forum.

> **(3)     Any Unwilling Alabama Witnesses Would Not be Subject to Compulsory Attendance in a Harris County Court.**

13.     As established above, the majority of witnesses in this case reside and work in Alabama.  During the course of this litigation, it is possible that a witness may become unwilling to appear in Texas.  Texas cannot compel Alabama residents to testify in its courts.  *See generally*, TEX. R. CIV. P. 176.1-176.6.  This factor weighs in favor of an Alabama forum for both parties.

---

[32] *Id.*
[33] *Id.*

### (4)   On-Site Inspection in Alabama is Necessary.

14.   Cornerstone Church alleges that the steel panels provided by Mid-West Steel for use in Cornerstone Church's facility in Madison, Alabama are defective because they delaminated in several locations from the foam cores and blistered.[34]  Upon receiving the panels, and before the defect was apparent, the panels were installed on the exterior of the facility where they currently remain.[35]  Accordingly, an on-site inspection of the facility will be necessary in order for the defective panels, and their effect on the facility, to be observed and evaluated by any experts in the case.  If the case remains in Texas, both parties will be forced to incur additional expert and attorney travel expenses to conduct such necessary on-site examinations.  Thus, this factor, like all of the other private interest facts, weighs in favor of an Alabama forum.

### C.   The Public Interest Factors Weigh in Favor of an Alabama Forum.

15.   In addition to the foregoing private interest factors, under *Gulf Oil*, the public-interest factors that should be considered include the following: (1) administrative difficulties for courts when litigation is piled up in congested centers instead of being handled at its origin; (2) the burden of jury duty that ought not to be imposed upon the people of a community with no relation to the litigation; and (3) the local interest in having localized controversies decided at home. *Richardson*, 439 S.W.3d at 548. Just like the private factors, these public interest factors all weigh in favor of dismissal of this case in Texas since Madison, Alabama is related to the litigation.

### (1)   The Courts of Harris County Should Not Be Burdened With This Case.

16.   The courts of Harris County, Texas should not be burdened with resolving a dispute that has no significant relationship with Texas.  The Harris County District Courts, unlike

---

[34] Ex. B, Conover Declaration.
[35] *Id.*

8

the Circuit Court of Madison County, Alabama, face a significant docket congestion problem. Between September 1, 2014, and August 31, 2015, there were 46,354 new civil cases filed in the Harris County District Courts.[36] Conversely, during roughly this same period, there were 2,462 new civil cases filed in the Circuit Court of Madison County, Alabama.[37] It would be unnecessarily burdensome on the Harris County District Courts to keep this case in Texas when this case could more easily and efficiently be handled by a less congested court in Madison County, Alabama. *See Benz Grp.*, 404 S.W.3d at 98.

**(2)      Harris County Jurors Should Not Be Burdened With This Case.**

17.      Because this controversy arose in Alabama and involves a dispute between an Alabama non-profit corporation[38] and a Nevada corporation,[39] Texas jurors do not have a substantial relationship to the litigation; thus, they would have no interest in resolving the case. It would be more just to require Alabama jurors and taxpayers to bear the time and expense of litigating a dispute that arises from materials ordered and delivered in Alabama for Alabama construction projects. *See Quixtar Inc.*, 315 S.W.3d at 35. The burden of jury duty to decide this case should not be imposed upon the people of Harris County since Harris County has little to no relation to this case, and this factor weighs in favor of this case being heard in Alabama.

**(3)      Alabama Has an Interest in Adjudicating this Case.**

18.      Texas courts recognize the interest of having localized controversies adjudicated in the jurisdiction in which they arose. *See Vinmar Trade Fin., Ltd. v. Util. Trailers de Mexico, S.A. de C.V.*, 336 S.W.3d 664, 678-79 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Unlike

---

[36] District Courts: Activity by County Summary at p. 3, available at http://www.txcourts.gov/media/1194394/4-District-Summary-by-County-PDF.pdf.
[37] Alabama Unified Judicial System, Fiscal Year 2015 Annual Report and Statistics at p. 139, available at http://www.alacourt.gov/Annual%20Reports/2015AOCAnnualReport.pdf.
[38] Ex. A, Garver Declaration.
[39] Ex. D, NCI Group, Inc.'s Application for Certificate of Authority of a Foreign Corporation to Transact Business in Alabama.

9

Texas, Alabama has an interest in deciding this case.  As described, this dispute involves a purchase order signed in Alabama, with the place of performance in Alabama, for materials that were incorporated into two facilities located in Alabama.  Furthermore, the materials were manufactured by a Nevada corporation[40] at a facility located outside of Texas and supplied to Cornerstone Church in Alabama.[41] Although this dispute involves a Nevada corporation that has an office in Texas, Alabama's interest in resolving a dispute that originated in Alabama outweighs any interest Texas would have in providing a Nevada corporation with a forum for resolving this dispute.  *Id.*  Therefore, this case should be heard in Alabama, and the public interest factors weigh heavily in favor of dismissal just like the private interest factors.

> **D.     The Forum-Selection Clause Does Not Outweigh the Private and Public Factors.**

19.     As was evident in the briefing on Cornerstone Church's special appearance, Mid-West Steel relies solely on the forum-selection clause in the purchase order to justify litigating this dispute in Texas. While the forum-selection clause may have been outcome determinative for purposes of deciding Cornerstone Church's special appearance, the same does not hold true in the context of this motion to dismiss for *forum non conveniens*. Instead, the forum-selection clause is merely a factor to consider in determining whether to dismiss the case. *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 711 (Tex. App.—Dallas 2010, no pet.) ("While the [forum-selection] confers personal jurisdiction over [the defendant], it does not preclude consideration of a motion to dismiss on the theory of *forum non conveniens*. Rather, the forum-selection clause is considered as a factor in determining whether the trial court erred by dismissing the case for forum non conveniens."); *Sarieddine v. Moussa*, 820 S.W.2d 837, 839 (Tex. App.—Dallas 1991, writ denied) ("[A] trial court is not bound by the forum-selection clause agreement if the

---

[40] *Id.*
[41] Plaintiff's Original Petition at Ex. A, p. 1.

interests of the witness and of the public strongly favor transferring the case to another forum");

*K2M3, LLC v. Cocoon Data Holding Pty. Ltd. ACN 127 993 300*, 13-11-00194-CV, 2012 WL 2469705, at *7 (Tex. App.—Corpus Christi June 28, 2012, pet. denied) (mem. op.) ("A forum-selection clause is considered as a factor in determining whether the trial court erred by dismissing a case for forum non conveniens."). As demonstrated above, the private and public interest factors weigh heavily in favor of dismissing this case and having it heard in Alabama. Further, as explained above and in Cornerstone Church's briefing in support of its special appearance, the forum-selection clause in the purchase order is fundamentally unfair because there was a disparity in sophistication between the parties, the forum-selection clause is buried in boilerplate terms printed in barely legible font in a form purchase order, and the selected forum bears little to no relation to the facts underlying the dispute.[42] When Pastor Garver signed the form purchase order, he was not aware of the forum-selection language, or any of the other provisions that relate to trial in Harris County, Texas, in the fine print of the purchase order.[43] He did not understand that Cornerstone Word of Life Church could be sued in Harris County, Texas, and he was surprised when he found out about the forum-selection language and the other provisions that relate to trial in Harris County, Texas after this lawsuit was filed.[44] If this lawsuit remains in Harris County, Texas, it will cause a strain on the Church's finances and it will pull Pastor Garver away from his normal duties and responsibilities as the senior pastor of Cornerstone Word of Life Church in Madison, Alabama.[45] Texas is simply an inconvenient and

---

[42] *See* Cornerstone Church's Special Appearance and Reply to Mid-West Steel's Response to Cornerstone Church's Special Appearance, true and correct copies of which are on file with this Court and incorporated by reference herein for all purposes.
[43] Ex. A, Garver Declaration.
[44] *Id.*
[45] *Id.*

11

unnecessarily expensive forum for this dispute. As a result, the forum-selection clause does not outweigh the private and public interest factors discussed above.

## III.
## CONCLUSION

20.     Alabama is an available and adequate forum for this case.  Pursuant to the factors delineated above, it would be inequitable and unduly burdensome to the parties, witnesses, and courts and citizens of Texas to maintain this case in Harris County when all significant facts arose in Alabama and there is no significant connection to Texas.  The balance of conveniences suggests that trial in Harris County, Texas would be unnecessarily burdensome for Cornerstone Church and the Harris County District Courts. Thus, dismissal is proper. *Benz Group*, 404 S.W.3d at 97.

## IV.
## PRAYER

21.     For these reasons, Cornerstone Church asks that the Court grant its motion to dismiss Mid-West Steel's claims with prejudice to refiling in Harris County, Texas.

12

Dated: April 21, 2017                Respectfully submitted,

                                     **PORTER HEDGES LLP**

                                     By: /s/ Sean M. McChristian
                                         **JOSEPH D. COHEN**
                                         State Bar No. 04508369
                                         **SEAN M. McCHRISTIAN**
                                         State Bar No. 24067751
                                         1000 Main Street, 36th Floor
                                         Houston, Texas  77002
                                         (713) 226-6628 Cohen telephone
                                         (713) 226-6228 Cohen facsimile
                                         jcohen@porterhedges.com
                                         (713) 226-6632 McChristian telephone
                                         (713) 226-6232 McChristian facsimile
                                         smcchristian@porterhedges.com

                                     **ATTORNEYS FOR DEFENDANT**
                                     **CORNERSTONE WORD OF LIFE CHURCH**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was served on April 21, 2017, by electronic mail and/or electronic notice of filing on the following:

Patrick Sullivan
Hoover Slovacek LLP
Galleria Tower II
5051 Westheimer, Suite 1200
Houston, Texas 77056

                                     /s/ Sean M. McChristian
                                     SEAN M. MCCHRISTIAN

6115568v1

CAUSE NO. 2016-75388

| | | |
|---|---|---|
| MID-WEST STEEL BUILDING COMPANY, A DIVISION OF NCI GROUP, INC. | §<br>§<br>§<br>§ | IN THE DISTRICT COURT OF |
| V. | §<br>§ | HARRIS COUNTY, TEXAS |
| CORNERSTONE WORD OF LIFE CHURCH | §<br>§ | 269TH JUDICIAL DISTRICT |

## DECLARATION OF PASTOR MARK GARVER

Pastor Mark Garver makes the following declaration:

1.  My name is Pastor Mark Garver and I am the senior pastor of Cornerstone Word of Life Church in Madison, Alabama. I am over 18 years of age, of sound mind, and capable of making this declaration. The facts stated in this declaration are within my personal knowledge due to my position as the senior pastor of Cornerstone Word of Life Church and my personal involvement with the construction of new church facilities for Cornerstone Word of Life Church in Madison, Alabama.

2.  Cornerstone Word of Life Church is not a resident of the State of Texas. Cornerstone Word of Life Church is an Alabama non-profit corporation and does not operate in Texas. Cornerstone Word of Life Church has always resided and operated in Alabama. Cornerstone Word of Life Church is not registered in Texas, does not own any property in Texas, and does not have any offices, employees, agents, or representatives in Texas. Cornerstone Word of Life Church has never been a party to a lawsuit in Texas.

3.  Cornerstone Word of Life Church worked with Churches by Daniels, a contractor located in Broken Arrow, Oklahoma, to construct new church facilities in Madison, Alabama. Cornerstone Work of Life Church worked with Churches by Daniels because it was the most economical way for the church facilities to be built. Churches by Daniels identified Mid-West Steel as a company that could supply certain materials for use in the construction of the new church facilities in Madison, Alabama. I was provided with a form purchase order for the materials in Alabama and signed the purchase order in Alabama.

4.  It will be difficult and burdensome for Cornerstone Word of Life Church to defend itself against this lawsuit filed in Texas. All of Cornerstone Word of Life Church's pastors and board members live in Alabama, and the people from Cornerstone Word of Life Church that were involved in

**EXHIBIT**

**A**

the construction of the new church facilities live in Alabama. The costs of defending the lawsuit will have to be paid from the Cornerstone Word of Life Church's limited funds.

5.   When I signed the form purchase order, I was not aware of the forum-selection language, or any of the other provisions that relate to trial in Harris County, Texas, in the fine print of the purchase order. I did not understand that Cornerstone Word of Life Church could be sued in Harris County, Texas, and I was surprised when I found out about the forum-selection language and the other provisions that relate to trial in Harris County, Texas after this lawsuit was filed. If this lawsuit remains in Harris County, Texas, it will cause a strain on our church finances and it will pull me away from my normal duties and responsibilities as the senior pastor of Cornerstone Word of Life Church in Madison, Alabama.

My name is Pastor Mark Dewayne Garver, my date of birth is March 11, 1963, and my address is 187 Emerson Road, Madison, Alabama 35758. In compliance with section 132.001 of the Texas Civil Practice and Remedies Code, I declare under penalty of perjury that the foregoing is true and correct.

Executed in Madison County, State of Alabama, on the _18_ day of April, 2017.

Pastor Mark Garver
Cornerstone Word of Life Church
Declarant

6115568v1

CAUSE NO. 2016-75388

| | | |
|---|---|---|
| MID-WEST STEEL BUILDING COMPANY, A DIVISION OF NCI GROUP, INC. | §<br>§<br>§<br>§ | IN THE DISTRICT COURT OF |
| V. | §<br>§ | HARRIS COUNTY, TEXAS |
| CORNERSTONE WORD OF LIFE CHURCH | §<br>§ | 269TH JUDICIAL DISTRICT |

## DECLARATION OF PASTOR ROBERT CONOVER

Pastor Robert Conover makes the following declaration:

1. My name is Pastor Robert Conover and I am an associate pastor of Cornerstone Word of Life Church in Madison, Alabama. I am over 18 years of age, of sound mind, and capable of making this declaration. The facts stated in this declaration are within my personal knowledge due to my position as an associate pastor of Cornerstone Word of Life Church and my personal involvement with the construction of new church facilities for Cornerstone Word of Life Church in Madison, Alabama.

2. Cornerstone Word of Life Church worked with Churches by Daniels, a contractor located in Broken Arrow, Oklahoma, to construct new church facilities in Madison, Alabama. Churches by Daniels identified Mid-West Steel as a company that could supply certain materials for use in the construction of the new church facilities in Madison, Alabama.

3. In connection with the construction of a building in Madison, Alabama prior to the building referenced in Mid-West Steel's petition, Mid-West Steel provided Cornerstone Word of Life Church with approximately 14,000 square feet of insulated panels for the building in Alabama. According to Mid-West Steel, the panels came from Metl-Span. After the panels were installed on the building, Cornerstone Word of Life Church began to see what appeared to be bubbles forming on the surface of the panels.

4. Cornerstone Word of Life Church discussed the issue with Churches by Daniels, and communicated with Mid-West Steel and Metl-Span. Metl-Span referred to the issue as blistering and said the blisters were likely caused by a chemical reaction in the foam components of the panels. Cornerstone Word of Life Church also learned that the blisters were an anomaly occurring due to a chemical reaction between the glue and the foam used at a Metl-Span facility in Jackson, Mississippi, and this issue had been observed at other locations. Cornerstone Word of Life Church

6115568v1

1

EXHIBIT

**B**

made a warranty claim with Mid-West Steel, but Mid-West Steel did not provide Cornerstone Word of Life Church with a workable solution for the issue or replace the panels despite sending representatives to inspect the panels in Alabama.

5.  While the issue with the defective panels was pending, Churches by Daniels advised Cornerstone Word of Life Church to order additional materials for a second building from Mid-West Steel as a show of good faith and Cornerstone Word of Life Church's trust in Mid-West Steel to resolve the issue with the defective panels. Cornerstone Word of Life Church was provided with a form purchase order for the materials in Alabama, and Pastor Mark Garver signed the purchase order in Alabama. Certain materials were then delivered to the project site in Madison, Alabama.

6.  Cornerstone Word of Life Church's construction related documents are located in Alabama. The new facilities that incorporated the Mid-West Steel materials are located in Alabama. The panels that blistered are also located in Alabama. Mid-West Steel representatives travelled to Alabama to inspect the building. Any repairs or replacement work that may be performed will likely be performed by an Alabama based contractor.

My name is Pastor Robert Armand Conover, my date of birth is June 9, 1980, and my address is 210 Healy Drive, Madison, Alabama 35756. In compliance with section 132.001 of the Texas Civil Practice and Remedies Code, I declare under penalty of perjury that the foregoing is true and correct.

Executed in Madison County, State of Alabama, on the ____ day of April, 2017.

Pastor Robert Conover
Cornerstone Word of Life Church
Declarant

6115568v1

2



AlaFile E-Notice

47-CV-2017-900265.00

To: ROBERT R BAUGH
     rbaugh@sirote.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

CORNERSTONE WORD OF LIFE CHURCH, INC. V. METL-SPAN, A DIVISION OF NCI
47-CV-2017-900265.00

The following complaint was FILED on 2/17/2017 3:55:01 PM

Notice Date:       2/17/2017 3:55:01 PM

DEBRA KIZER
CIRCUIT COURT CLERK
MADISON COUNTY, ALABAMA
MADISON COUNTY, ALABAMA
100 NORTHSIDE SQUARE
HUNTSVILLE, AL, 35801

256-532-3390



EXHIBIT

C

DOCUMENT 1

ELECTRONICALLY FILED
2/17/2017 3:54 PM
47-CV-2017-900265.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev.5/99 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case<br>47 |
|---|---|---|

Date of Filing:            Judge Code:
02/17/2017

## GENERAL INFORMATION

### IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA
**CORNERSTONE WORD OF LIFE CHURCH, INC. v. METL-SPAN, A DIVISION OF NCI GROUP, INC. ET AL**

First Plaintiff:  ☑ Business   ☐ Individual          First Defendant:  ☑ Business   ☐ Individual
☐ Government   ☐ Other                                ☐ Government   ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonness
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☑ TBFM - Fraud/Bad Faith/Misrepresentation
☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
☐ TOPE - Personal Property
☐ TORE - Real Property

**OTHER CIVIL FILINGS**
☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Service

**OTHER CIVIL FILINGS  (cont'd)**
☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/
Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP - Contempt of Court
☐ CONT - Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/
Injunction Election Contest/Quiet Title/Sale For Division
☐ CVUD - Eviction Appeal/Unlawful Detainer
☐ FORJ - Foreign Judgment
☐ FORF - Fruits of Crime Forfeiture
☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB - Protection From Abuse
☐ FELA - Railroad/Seaman (FELA)
☐ RPRO - Real Property
☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP - Workers' Compensation
☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN:**   F ☑ INITIAL FILING          A ☐ APPEAL FROM          O ☐ OTHER
DISTRICT COURT

R ☐ REMANDED          T ☐ TRANSFERRED FROM
OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?**  ☑ YES  ☐ NO      **Note:** Checking "Yes" does not constitute a demand for a
jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:**      ☑ MONETARY AWARD REQUESTED   ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**
BAU002                    2/17/2017 3:54:53 PM                    /s/ ROBERT R BAUGH
Date                                  Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:**      ☐ YES ☑ NO  ☐ UNDECIDED

DOCUMENT 2

ELECTRONICALLY FILED
2/17/2017 3:54 PM
47-CV-2017-900265.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

## IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

| | |
|---|---|
| CORNERSTONE WORD OF LIFE CHURCH, INC., | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| METL-SPAN, a division of NCI GROUP, INC., MID-WEST STEEL BUILDING COMPANY, a division of NCI GROUP, INC., | ) CIVIL ACTION NO.  CV- _____ |
| | ) |
| | ) |
| Defendant. | |

## COMPLAINT

COMES NOW the Plaintiff, Cornerstone Word of Life Church, (hereinafter "Cornerstone"), and files this Complaint and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, Cornerstone, is non-profit church incorporated in Madison County, Alabama with its primary place of business in Madison County, Alabama.  Plaintiff has only one church building and it is located at 3783 Sullivan Street in Madison, Alabama. Cornerstone has no other locations.

2.      Defendant Metl-Span, a division of NCI Group, Inc. ("Metl-Span"), is a Nevada Corporation with its principal place of business in Texas.  Metl-Span does business in the State of Alabama.

3.      Defendant Mid-West Steel Building Company, a division of NCI Group, Inc. ("Mid-West Steel"), is a Nevada Corporation with its principal place of business in Texas. Mid-West Steel does business in the State of Alabama.

4.      This Court has jurisdiction because the representations, actions, and damages at issue in this case occurred in Madison County, Alabama.

5.      Venue in this county is proper pursuant to Alabama Code § 6-3-7.

## FACTS

6.      In 2012, Cornerstone hired Churches By Daniels, Inc. ("D&D Construction"), to build its church building located at 3783 Sullivan Street in Madison, Alabama.

7.      D&D Construction used insulated metal panels manufactured by the Defendant Metl-Span for the exterior walls of the church.  The insulated metal panels are described more specifically as follows:  SVP ETX Fascia Panel with 42" Coverage (Rockwall Granite); 2 1/2" thick, no vapor seal; Interior mesa profile.

8.      The insulated panels were manufactured by Defendant Metl-Span and sold by Defendant Mid-West Steel.  The panels were manufactured at a plant in Jackson, Mississippi.

9.      Cornerstone paid in full for the construction of the church building, including the total cost of the insulated metal panels sold by Defendant Metl-Span.

10.      The City of Madison, Alabama issued a Certificate of Occupancy for the church on October 2, 2013.

11.      In July 2015, Cornerstone first noticed bubbles or blistering appearing in the surface of the insulated metal panels.

12.      The blisters are large in size and tarnish the look of Cornerstone's three-year-old building.

13.      The blisters began appearing in July 2015, and have continued to multiply since that time.

14.     Upon information and belief, the blisters have caused or will cause damage to the insulated metal panels.

15.     Upon first noticing the blisters in July 2015, Cornerstone contacted D&D Construction to address the problem.  Through D&D Construction, Cornerstone learned that Defendant Metl-Span manufactured the insulated metal panels.

16.     After being contacted, Metl-Span investigated the issue and Metl-Span determined that the problem was likely blisters, in lieu of delaminating.  Defendants disclosed to Cornerstone in July 2015 that the foam used by the Jackson, Mississippi plant where the panels were manufactured was prone to this problem.  The foam caused gases to be released by the panels which were then trapped in the exterior skin of the metal panels.

17.     Metl-Span sent representatives to the Cornerstone church in Madison, Alabama to inspect the panels on or about August 10, 2015.

18.     On August 17, 2015, Cornerstone entered into a new Purchase Order with Defendant Mid-West for the purchase of steel for an extension to the church building located at this same location in Madison, Alabama.  Cornerstone chose to continue doing business with Mid-West as an act of good faith. Mid-West had recently visited the church building to inspect the problem with the insulated metal panels, and Cornerstone believed that Mid-West would stand by its product and resolve problem.

19.     From August 2015 until February 2016, Metl-Span did nothing to address the blistered panels on the original church building.

20.     In February 2016, after the invoice for the second Purchase Order for the steel used in the building extension was due, Metl-Span contacted Cornerstone to request a date and time to resolve the blistering issue.  Metl-Span's suggested solution was to "drill the blisters

as a first course of attempting to correct the issue."   The Defendants' proposed solution was to drill holes into the panels to release the trapped gas.

21.    Cornerstone requested the Defendants to fully analyze the suggested solution of drilling holes into the building to repair the blistering issue.  Defendants refused to offer any guaranteed solution to resolve the issue, and insisted on drilling holes into the numerous blisters before offering any other solution to resolve the problem.

22.    On April 28, 2016, Defendants ceased any efforts to resolve the blistering issue in writing.

## COUNT I

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

23.    Cornerstone adopts and incorporates by reference each and every allegation and averment in the preceding numbered and unnumbered paragraphs as if fully set forth herein.

24.    Defendants are merchants with respect to insulated metal panels, and sold insulated metal panels to Cornerstone for the purpose of installing the insulated metal panels into the church building, in the general and ordinary use for which insulated metal panels are sold. As a consequence of selling the insulated metal panels to Cornerstone in Alabama, the statutory and common law of Alabama imposes an implied warranty of merchantability that the insulated metal panels are of merchantable quality.

25.    Defendants' Jackson, Mississippi plant used foam for the insulated metal panels which caused gas to collect and blister on the surface of the panels.  Cornerstone gave notice to Defendants that the blistered panels must be fully repaired.

26.    Defendants' insulated metal panels were not of "merchantable" quality within the meaning of Alabama Code § 7-2-314.

27.     Defendants breached the implied warranty of merchantability under section 7-2-314 by supplying insulated metal panels which blistered and delaminated from the core.

28.     As a proximate consequence of Defendants' breach of implied warranty of merchantability, Cornerstone has been damaged.

**WHEREFORE, PREMISES CONSIDERED,** Cornerstone demands judgment against Defendants to be determined by a jury, for all incidental, consequential, and compensatory damages, attorneys' fees, and costs.

## COUNT II

## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

29.     Cornerstone adopts and incorporates by reference each and every allegation and averment in the preceding numbered and unnumbered paragraphs as if fully set forth herein.

30.     Cornerstone informed Defendants that Cornerstone would use the Defendants' insulated metal panels for use on Cornerstone's church building in Madison, Alabama.  Cornerstone relied upon Defendants' skill and judgment to furnish suitable insulated metal panels.

31.     Defendants knew or had reason to know that Cornerstone was relying on Defendants' skill and judgment to supply Cornerstone with insulated metal panels that would conform to Cornerstone's needs.

32.     Defendants' insulated metal panels blistered due to defective foam used by the Defendants' Jackson, Mississippi plant, and Cornerstone gave Defendants notice of the damages to its building.

33.     As a consequence of selling Defendants insulated metal panels to Cornerstone in Alabama, the statutory and common law of Alabama imposes an implied warranty of fitness for a particular purpose.  Defendants breached its implied warranty of fitness for a particular purpose by supplying Cornerstone with blistering insulated metal panels that failed of their intended and particular purpose.

34.     As a proximate consequence of Defendants' breach of implied warranty for fitness for a particular purpose, Cornerstone has been damaged.

**WHEREFORE, PREMISES CONSIDERED,** Cornerstone demands judgment against DEFENDANTS to be determined by a jury, for all incidental, consequential, and compensatory damages, attorneys' fees, and costs.

## COUNT III

### INNOCENT FRAUD/MISREPRESENTATION

35.     Cornerstone adopts and incorporates by reference each and every allegation and averment in the preceding numbered and unnumbered paragraphs as if fully set forth herein.

36.     Defendants negligently, mistakenly, and/or innocently misrepresented to Cornerstone that, based on its experience, Defendants would provide insulated metal panels in accordance with Cornerstone's specific requests and needs.  Defendants' insulated metal panels failed to meet Cornerstone's requests and needs when the panels experienced sudden blistering which occurred in July 2015.

37.     Cornerstone reasonably relied on Defendants' skill, experience, and judgment in selecting the insulated metal panels at issue.  Cornerstone would not have selected the Defendants' insulated metal panels if Defendants had not promised to provide insulated metal panels in conformance with Cornerstone's specifications.

DOCUMENT 2

38.     As a proximate consequence of Cornerstone's reliance upon Defendants' negligent, mistaken, or innocent misrepresentation, Cornerstone has been damaged.

**WHEREFORE, PREMISES CONSIDERED,** Cornerstone demands judgment against Defendants to be determined by a jury, for all incidental, consequential, and compensatory, and punitive damages, attorneys' fees, and costs.

<u>COUNT IV</u>

**<u>PROMISSORY FRAUD</u>**

39.     Cornerstone adopts and incorporates by reference each and every allegation and averment in the preceding numbered and unnumbered paragraphs as if fully set forth herein.

40.     Defendants recklessly, negligently, mistakenly, and/or wantonly misrepresented to Cornerstone that, based on its experience, it could and would provide insulated metal panels in accordance with Cornerstone's specific requests and needs.  Defendants knew that the insulated metal panels would blister, but nevertheless failed to provide Cornerstone with written or verbal notice that its insulated metal panels would not be in accordance with Cornerstone's specifications.

41.     Defendants knew or should have known that Cornerstone was reasonably relying on Defendants' skill, experience, and judgment to provide insulated metal panels in conformance with Cornerstone's specifications.

42.     As a proximate consequence of Cornerstone's reliance on Defendants' reckless, negligent, mistaken, and/or wanton misrepresentations, Cornerstone has been damaged.

**WHEREFORE, PREMISES CONSIDERED,** Cornerstone demands judgment against Defendants to be determined by a jury, for all incidental, consequential, punitive, and compensatory, and punitive damages, attorneys' fees, and costs.

## COUNT V

### FRAUDULENT MISREPRESENTATION

43.     Cornerstone adopts and incorporates by reference each and every allegation and averment in the preceding numbered and unnumbered paragraphs as if fully set forth herein.

44.     Defendants recklessly, negligently, mistakenly, and/or wantonly misrepresented to Cornerstone that, based on its experience, it could and would provide insulated metal panels in accordance with Cornerstone's specific requests and needs.  Defendants knew that the insulated metal panels would blister, but nevertheless failed to provide Cornerstone with written or verbal notice that its insulated metal panels would not be in accordance with Cornerstone's specifications.

45.     Defendants knew or should have known that Cornerstone was reasonably relying on Defendants' skill, experience, and judgment to provide insulated metal panels in conformance with Cornerstone's specifications.

46.     As a proximate consequence of Cornerstone's reliance on Defendants' reckless, negligent, mistaken, and/or wanton misrepresentations, Cornerstone has been damaged.

**WHEREFORE, PREMISES CONSIDERED,** Cornerstone demands judgment against Defendants to be determined by a jury, for all incidental, consequential, punitive, and compensatory damages, attorneys' fees, and costs.

### COUNT VI

### BREACH OF CONTRACT

47.     Cornerstone adopts and incorporates by reference each and every allegation and averment in the preceding numbered and unnumbered paragraphs as if fully set forth herein.

DOCUMENT 2

48.     Cornerstone entered into a contract with Defendant Mid-West Steel in January 2013 for the purchase of insulated steel panels for the exterior walls of its church building.

49.     Cornerstone paid in full for the insulated steel panels which were sold by Defendant Mid-West Steel.

50.     Defendant Mid-West Steel breached the contract by supplying insulated steel panels which failed to conform to Cornerstone's specifications.

51.     As a proximate consequence of Defendant's breach of contract, Cornerstone has been damaged.

**WHEREFORE, PREMISES CONSIDERED,** Cornerstone demands judgment against Defendants to be determined by a jury, for all incidental, consequential, and compensatory damages, attorneys' fees, and costs.

## COUNT VI

## FRAUDULENT SUPPRESSION

52.     Cornerstone adopts and incorporates by reference each and every allegation and averment in the preceding numbered and unnumbered paragraphs as if fully set forth herein.

53.     Due to the representations and warranties tendered by the Defendants, Defendants had a duty to disclose that the insulated metal panels were manufactured in Jackson, Mississippi, and that the foam used in the Jackson, Mississippi plant would cause the insulated metal panels to blister.

54.     Until July 2015, Defendants concealed their knowledge of the defectiveness of the foam used in constructing the insulated metal panels at issue. The insulated

metal panels which were sold to Cornerstone and installed in Cornerstone's new church building were defective and failed to meet Cornerstone's specifications.

55.    Defendants knew or should have known Cornerstone was reasonably relying on Defendants' skill, experience, and judgment to provide insulated metal panels in conformance with Cornerstone's specifications.

56.    As a proximate consequence of Defendants' fraudulent suppression of the defectiveness of the foam used in manufacturing Cornerstone's insulated metal panels, Cornerstone has been damaged.

**WHEREFORE, PREMISES CONSIDERED,** Cornerstone demands judgment against Defendants to be determined by a jury, for all incidental, consequential, punitive, and compensatory damages, attorneys' fees, and costs.

## JURY DEMAND

PLAINTIFF HEREBY DEMANDS A TRIAL BY STRUCK JURY.

/s/Robert R. Baugh
ROBERT R. BAUGH (BAU002)
JAIME C. ERDBERG (ERD004)
Attorneys for Plaintiff
Cornerstone Word of Life Church

**OF COUNSEL**:
SIROTE & PERMUTT, P.C.
2311 Highland Avenue South
P.O. Box 55887
Birmingham AL  35255-5887
(205) 930-5307 / fax 205-930-5101

/s/Benjamin R. Little
BENJAMIN R. LITTLE (LIT015)
Attorney for Plaintiff
Cornerstone Word of Life Church

DOCUMENT 2

**OF COUNSEL**:
SIROTE & PERMUTT, P.C.
305 Church Street SW, Suite 800
P.O. Box 18248
Huntsville, AL 35804-8248
(256) 536-3666 / fax 256-518-3681


**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL AT**:

METL-SPAN, a division of NCI Group, Inc.
c/o National Registered Agents Inc.
2 North Jackson Street Suite 605
Montgomery, AL 36104

MID-WEST STEEL BUILDING COMPANY, a division of NCI Group, Inc.
c/o National Registered Agents Inc.
2 North Jackson Street Suite 605
Montgomery, AL 36104

DOCSBHM\2161245\1

DOCUMENT 3



ELECTRONICALLY FILED
2/17/2017 3:54 PM
47-CV-2017-900265.00
CIRCUIT COURT OF
MADISON COUNTY, ALABAMA
DEBRA KIZER, CLERK

## IN THE CIRCUIT COURT OF MADISON COUNTY, ALABAMA

| | |
|---|---|
| **CORNERSTONE WORD OF LIFE CHURCH, INC.,** | ) ) ) |
| **Plaintiff,** | ) ) ) |
| **v.** | ) ) |
| **METL-SPAN, a division of NCI GROUP, INC., MID-WEST STEEL BUILDING COMPANY, a division of NCI GROUP, INC.,** | ) ) ) ) ) |
| **Defendant.** | ) ) |

**CIVIL ACTION NO.  CV- _____**

### INTERROGATORIES & REQUESTS FOR PRODUCTION

COMES NOW the Plaintiff Cornerstone Word of Life Church, Inc. (hereinafter "Plaintiff" or "Cornerstone") and propounds the following Interrogatories and Requests for Production to Defendants:

### INSTRUCTIONS AND DEFINITIONS

A.    Wherever the words "you" or "your" appear, they will mean the Defendants, and their agents, attorneys, or anyone who acted on their behalf.

B.    The term "person" means any natural person (living or dead), corporation, company, partnership, association, proprietorship, organization, government, unit, group or other entity.

C.    To the extent that you consider any of the following interrogatories or requests subject to objection, please respond to that part of the interrogatory or request to which you do not object, and separately state that part of each interrogatory or request to which you object, and each ground for each such objection.

D.    These requests and interrogatories are intended to be of a continuing nature.  If additional documents or information is discovered by you or your attorney at a later date, they should be communicated or produced immediately.

E.    If you claim or contend that any interrogatory or request seeks information protected by any type of privilege, identify the request or interrogatory and documents involved, and describe in detail the privilege asserted and the circumstances upon which the claim of privilege is based.

F.     If any document responsive to any of these interrogatories or requests was, but no longer is, in your possession or subject to your control, describe in detail what happened to the document, the reason it is no longer in your possession or subject to your control, the document's present custodian, if known, and describe in detail the nature and contents of the document.

G.     A document "relating," "related," or which "relates" to any given subject means any document that constitutes, contains, embodies, evidences, reflects, identifies, states, contradicts, refutes, refers to, deals with, or is in any way pertinent to that subject including, without limitation, documents concerning the preparation of other documents.

H.     As used herein, the term "document" is used in the broadest possible sense and includes, without limitation, the following items, whether printed, recorded, filmed, reproduced by any process or written or produced by hand, and whether claimed to be privileged against discovery on any ground, and whether an original, master or copy, namely:   agreements, correspondence, communications, including intra-company communications and correspondence; cablegrams, radiograms and telegrams; notes and memoranda; summaries, minutes and records of telephone conversations, meetings and conferences, including lists of persons attending meetings or conferences; summaries and records of personal conversations or interviews; books, manuals, publications and diaries; laboratory and engineering reports and notebooks; charts and plans; sketches and drawings; photographs, reports and/or summaries of investigations and/or surveys; opinions and reports of consultants; opinions of counsel; reports and summaries of negotiations; brochures, pamphlets, catalogs and catalog sheets; advertisements, including story board and/or scripts for televisions and/or radio commercials; circulars; trade letters; press publicity and trade and produce release; drafts of original or preliminary notes on, and marginal, appearing on any documents, computer tapes, disks, and printouts; audio and visual tapes; or reports and records; and any other recorded or preserved information of any kind.

## **INTERROGATORIES**

1.     Identify by full name, address, position/title and duties each and every person or persons providing information for answering these interrogatories.

2.     Identify by name, last known address and telephone number all persons known to you or your agents with knowledge or information regarding the facts underlying the Complaint.

3.     Identify by name, last known address and telephone number all persons or entities known by you which have made a claim, complaint, filed a legal action, or otherwise put you on notice as to problems with quality, durability, or the blistering of your insulated metal

panel products from 2011 to the present, including in your response the date upon which the persons or entities made their complaints or notice known to you.

4.      Identify and describe any and all claims you have made to your insurance carriers in since 2011 in any way related your insulated metal panel products, including in your response the date upon which you made a claim, the name of the insurance carrier, and the carrier's determination as to coverage.

5.      Identify and describe any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered against you in this action or to indemnify or reimburse you for payments made to satisfy any such judgment.

6.      Identify and describe any and all tests, studies, or research related to the quality, durability, or blistering of your insulated metal panel products that you or someone hired by you has performed, and the findings thereof, including in your answer the name of the person or entity performing the test, study, or research, and the dates upon which the tests were conducted and the findings were reported to you.

7.      Identify and describe any and all tests, studies, or research related to the quality or durability of the foam used for insulated metal panels at your Jackson, MS plant that you or someone hired by you has performed, and the findings thereof, including in your answer the name of the person or entity performing the test, study, or research, and the dates upon which the tests were conducted and the findings were reported to you.

8.      Identify by full name, address, position/title and duties each and every representative of the Defendants who contacted and/or visited Cornerstone since July 2015.

DOCUMENT 3

9.      Identify and describe each and every civil lawsuit in which you have been a party, either as a plaintiff or defendant in the last five (5) years.

10.     Identify any and all industry standards that apply to delamination repairs for insulated metal panels.

11.     Identify any and all industry standards that apply to the foam manufactured by your Jackson, Mississippi plant for the panels at issue in this case.

12.     Identify by name, last known address and telephone number all persons from whom Defendants, or anyone acting on Defendants' behalf, obtained a written or oral statement regarding the issues, claims and defenses in this lawsuit, providing also the date(s) upon which all such statements were obtained.

13.     Identify each person Defendants expect to call as a witness in the trial of this cause, by name, address, telephone number, occupation, and employer.

14.     Identify each person whom Defendants intend to call as an expert witness during the trial of this case, and with respect to each such expert witness state the following:

      (a)     The educational background and experience of each such witness, and the facts constituting the basis of the qualifications of such witness;

      (b)     The subject matter about which such expert is expected to testify;

      (c)     The substance of any facts or opinions to which such witness is expected to testify; and

      (d)     A summary of the grounds for the basis of each opinion to which such witness is expected to testify.

15. Please describe the manufacturing process for the insulated metal panels at issue in this case, including, but not limited to, how the foam was manufactured, processed, and/or made at the Jackson, Mississippi location, and the names, addresses, and telephone numbers of anyone involved in the manufacturing, processing, and/or making of the insulated metal at issue.

16. Please state whether, following your discovery of the blistering problem at issue in this case, you made any changes or modifications to your manufacturing process described in the preceding interrogatory.

17. Please state the name, address, and telephone number of any and all manufacturers, distributors, and/or suppliers of raw materials used in manufacturing the insulated metal panels at issue in this case.

18. Please state all facts that explain your position for why the insulated metal panels at issue blistered.

19. Please explain your proposed remedy for the blistering of the insulated metal panels at issue in this case.

20. Please identify any other customer where this remedy has been employed to resolve an issue of the insulated metal panels blistering.

21. Please state whether you had any quality control and/or quality assurance policies, tests, and/or procedures, and if so, please describe those quality control and/or quality assurance policies, tests, and/or procedures, and the names, addresses, and telephone numbers of those individuals involved in or responsible for maintaining and complying with your quality control and/or quality assurance policies, tests, and/or procedures.

22.     Please state whether, following your discovery of the blistering problem at issue in this case, you made any changes or modifications to your quality control and/or quality assurance policies, tests, and/or procedures described in the preceding interrogatory.

23.     Please state how long you expected the insulated metal panels at issue to last before it experienced or underwent blistering.

24.     Do you contend that Cornerstone is, in any way, at fault for the blistering of the insulated metal panels at issue?  If so, please describe what you contend that Cornerstone did, or failed to do, to cause or contribute to the blistering of the insulated metal panels at issue.

25.     Please state whether the insulated metal panels at issue were tested or otherwise subjected to your quality control and/or quality assurance policies, tests, and/or procedures before being sold and/or delivered to Cornerstone.

## REQUESTS FOR PRODUCTION

1.     Produce any and all documents, recordings, e-mails, facsimiles, correspondence or other tangible things comprising, evidencing, relating to, or referring to complaints or notices by other persons or entities identified in Interrogatory #3.

2.     Produce a certified copy of each and every insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered against you in this action or to indemnify or reimburse you for payments made to satisfy any such judgment.

3.     Produce any and all documents, recordings, e-mails, facsimiles, correspondence or other tangible things comprising, evidencing, relating to, or referring to any and all claims submitted by you to your insurer related to the use of your products.

DOCSBHM\2161787\1

4.     Produce any and all documents, recordings, e-mails, facsimiles, correspondence or other tangible things comprising, evidencing, relating to, or referring to any and all communications between you and Cornerstone for the past five (5) years.

5.     Produce any and all documents relating to the sale of Defendants' insulated metal panels to Cornerstone, including therein all purchase orders, invoices, shipping documents, and receipts of payment.

6.     Produce any and all documents provided to, received from, and relied upon by any expert witness relating to this lawsuit, whether or not you expect to call the expert as a witness at trial.

7.     Produce a copy of the *curriculum vitae* of each and every expert witness you expect to testify on your behalf at the trial of this case.

8.     Produce any and all correspondence exchanged by and between you and each and every expert witness whom you intend to utilize in the trial of this matter.

9.     Produce a copy of your expert witness' entire file.

10.    Produce any and all documents upon which you intend to rely in your defense of this lawsuit.

11.    Please produce any and all documents that relate, reflect, or refer in any way to how and when the insulated metal panels at issue were manufactured, processed, made, stored, sold, and/or distributed.

12.    Please produce any and all documents that relate, reflect, or refer in any way to changes or modifications made to how the insulated metal panels were manufactured, processed, made, stored, sold, and/or distributed.

DOCUMENTS

13.     Please produce any and all documents that relate, reflect, or refer in any way to your purchase or acquisition of raw materials, pigments, and other additives used in manufacturing the insulated metal panels at issue in this case.

14.     Please produce any and all documents that relate, reflect, or refer in any way to any quality control and/or quality assurance policies, tests, and/or procedures in effect at the time of the manufacture, making, storage, sale, and/or distribution of the insulated metal panels at issue in this case.

15.     Please produce any and all documents that relate, reflect, or refer in any way to changes or modifications made to your quality control and/or quality assurance policies, tests, and/or procedures in effect at the time of the manufacture, making, storage, sale, and/or distribution of the insulated metal panels at issue in this case.

16.     Please produce any and all documents relating to how long you expected the insulated metal panels at issue to last before it experienced or underwent blistering.

17.     Please produce any and all documents supporting your contention that Cornerstone is, in any way, at fault for, or caused or contributed to, the blistering of the insulated metal panels at issue.

18.     Please produce any and all documents that reflect, relate, or refer in any way to whether the insulated metal panels at issue was tested or otherwise subjected to your quality control and/or quality assurance policies, tests, and/or procedures before being sold and/or distributed to Cornerstone.

19.     Please produce any and all documents that reflect, relate, or refer in any way to industry standards that apply to the manufacture, making, storage, sale, and/or

distribution of Defendants' insulated metal panels, including the foam manufactured at the Jackson, Mississippi plant.

20.     Please produce any and all documents that reflect, relate, or refer in any way to the blistering of the insulated metal panels at issue in this case, including but not limited to your discovery of the blistering, your attempts, if any, to discover the cause or contributing cause of the blistering, and any and all other related documents.

21.     Please produce all documents relating to any complaints made by Cornerstone regarding the insulated metal panels at issue in this case.

22.     Please produce all documents reflecting your response to the complaints made by Cornerstone regarding the insulated metal panels at issue, including any notes, memos or e-mail messages regarding the performance of the insulated metal panels.

23.     Please produce all documents that relate to the performance of the insulated metal panels at issue in this case.

24.     Please produce all documents relating to any claims or legal actions identified in your answer to Interrogatory #3.

25.     Please produce all documents that relate to your answer to Interrogatory #6.

26.     Please produce all documents that relate to your answer to Interrogatory #7.

27.     Please produce all documents that you consulted, reviewed, or relied upon to answer Cornerstone's Interrogatories.

/s/Robert R. Baugh
ROBERT R. BAUGH (BAU002)
JAIME C. ERDBERG (ERD004)
Attorneys for Plaintiff
Cornerstone Word of Life Church, Inc.

**OF COUNSEL**:
SIROTE & PERMUTT, P.C.
2311 Highland Avenue South
P.O. Box 55887
Birmingham AL  35255-5887
(205) 930-5307 / fax 205-930-5101

/s/Benjamin R. Little
BENJAMIN R. LITTLE (LIT015)
Attorney for Plaintiff
Cornerstone Word of Life Church, Inc.

**OF COUNSEL**:
SIROTE & PERMUTT, P.C.
305 Church Street SW, Suite 800
P.O. Box 18248
Huntsville, AL  35804-8248
(256) 536-3666 / fax 256-518-3681

**PLEASE SERVE WITH THE COMPLAINT ON THE DEFENDANT
VIA CERTIFIED MAIL AT:**

METL-SPAN, a division of NCI Group, Inc.
c/o National Registered Agents Inc.
2 North Jackson Street Suite 605
Montgomery, AL 36104

MID-WEST STEEL BUILDING COMPANY, a division of NCI Group, Inc.
c/o National Registered Agents Inc.
2 North Jackson Street Suite 605
Montgomery, AL 36104

John H. Merrill                                    P. O. Box 5616
Secretary of State                        Montgomery, AL 36103-5616

# STATE OF ALABAMA

**I, John H. Merrill, Secretary of State of Alabama, having custody of the Great and Principal Seal of said State, do hereby certify that**

as appears on file and of record in this office, the pages hereto attached, contain a true, accurate, and literal copy of the Articles of Formation filed on behalf of NCI Group, Inc., as received and filed in the Office of the Secretary of State on 11/02/2007.



20170411000011192

In Testimony Whereof, I have hereunto set my hand and affixed the Great Seal of the State, at the Capitol, in the city of Montgomery, on this day.

04/11/2017
_____
Date

_____
John H. Merrill                    Secretary of State

**EXHIBIT**

**D**

# 937-710

Posted by: **RB**   Checked by:

**FILED IN OFFICE**

**NOV - 2 2007**

**SECRETARY OF STATE**

# STATE OF ALABAMA

## APPLICATION FOR CERTIFICATE OF AUTHORITY
## OF A FOREIGN CORPORATION TO TRANSACT BUSINESS IN ALABAMA

TO THE SECRETARY OF STATE OF THE STATE OF ALABAMA,

PURSUANT TO THE PROVISIONS OF THE ALABAMA BUSINESS CORPORATION ACT, THE UNDERSIGNED CORPORATION HEREBY APPLIES FOR A CERTIFICATE OF AUTHORITY TO TRANSACT BUSINESS IN ALABAMA AND, FOR THAT PURPOSE, SUBMITS THE FOLLOWING STATEMENTS.

1. The exact name of the corporation:
   NCI Group, Inc.

2. If your corporate title does not include "Corporation," "Corp," "Incorporated" or "Inc.", one of these must be added for use in Alabama. Please list your exact corporate title with the addition of one of these words.
   _NCI Building Systems Inc._

3. State or Country of incorporation: Nevada

4. Date of incorporation: 04/12/1993     Duration of corporation: Perpetual

5. Street address of principal office:
   10943 North Sam Houston Parkway West, Houston, TX 77064

6. Name and **street address** (NO PO BOX) of registered agent in Alabama:
   National Registered Agents, Inc. 150 South Perry Street, Montgomery, AL  36104

7. The names and addresses of its directors and officers are:
   | NAME | OFFICE/TITLE | MAILING ADDRESS |
   |---|---|---|
   | See Attached List | | |
   | | | |
   | | | |
   | | | |
   | | | |

8. This application is accompanied by a copy of articles of incorporation and all amendments thereto, duly certified by the proper official of the state under the laws of which it is incorporated, together with the filing fee of $175.00.  The non-profit corporation filing fee is $75.00.   The certification by the Secretary of State or the equivalent in your state must be an **original** and **"current" (within six months)**.

Date: _October 9, 2007_

**RECEIVED**

**NOV 2 2007**

**SECRETARY OF STATE**

_Todd R. Moore  VP & Gen. Counsel_

Type or Print Corporate Officer's Name and Title

Signature of Officer

MAIL DUPLICATE ORIGINALS OF THIS APPLICATION, A CERTIFIED COPY OF THE CHARTER AND THE FILING FEE TO:
SECRETARY OF STATE, CORPORATIONS DIVISION, POST OFFICE BOX 5616, MONTGOMERY, ALABAMA 36103-5616
(334)242-5324

CD.2 Rev. 4/2000

**NCI Group, Inc.**

Nevada corporation
Fed ID: 76-0398132

10943 N. Sam Houston Parkway West
Houston, TX 77064

**Officers**

| | |
|---|---|
| A. R. Ginn | Chairman of the Corporation and of all Divisions |
| Norman C. Chambers | President and Chief Executive Officer of the Corporation and of all Divisions |
| Frances Powell Hawes | Executive Vice President, Chief Financial Officer and Treasurer of the Corporation and of all Divisions |
| Kelly R. Ginn | Executive Vice President of Operations of the Corporation |
| Kenneth W. Maddox | Executive Vice President— Administration of the Corporation and of all Divisions |
| Eric J. Brown | Vice President and Chief Information Officer of the Corporation and of all Divisions |
| Todd R. Moore | Vice President, General Counsel and Secretary of the Corporation and of all Divisions |
| Mark E. Johnson | Vice President— Accounting of the Corporation and of all Divisions |
| Rick D. Morrow | Vice President— Human Resources of the Corporation and of all Divisions |
| Ken W. Buchinger | Vice President— Corporate Warranties and Certifications of the Corporation and of all Divisions |
| Lynn Widrick | Vice President— Equipment of the Corporation and of all Divisions |
| Patrick J. Griffin | Vice President— Corporate Credit of the Corporation and of all Divisions |
| Mark T. Golladay | Vice President— Corporate Purchasing of the Corporation and of all Divisions |
| Louis A. Walton, IV | Tax Director of the Corporation and of all Divisions |
| Connie G. Wood | Assistant Secretary of the Corporation and of all Divisions |

**Directors**

Norman C. Chambers

Frances Powell Hawes

Kenneth W. Maddox

John H. Merrill                                                          P. O. Box 5616
Secretary of State                                          Montgomery, AL 36103-5616

# STATE OF ALABAMA

**I, John H. Merrill, Secretary of State of Alabama, having custody of the Great and Principal Seal of said State, do hereby certify that**

as appears on file and of record in this office, the pages hereto attached, contain a true, accurate, and literal copy of the Registered Agent Change filed on behalf of NCI Group, Inc., as received and filed in the Office of the Secretary of State on 04/27/2016.



In Testimony Whereof, I have hereunto set my hand and affixed the Great Seal of the State, at the Capitol, in the city of Montgomery, on this day.

04/11/2017
_____
Date

_____
John H. Merrill          Secretary of State

20170411000011192

**EXHIBIT**

**E**

**STATE OF ALABAMA**

**CHANGE OF REGISTERED AGENT
OR REGISTERED OFFICE BY ENTITY**

PURPOSE: To change an entity's registered office, its registered agent, or both, by delivering to the Secretary of State for filing a statement of change in accordance with 10A-1-5.32. Use a separate form for each separate Entity Identification (ID) number.

**INSTRUCTIONS TO OBTAIN INFORMATION TO COMPLETE THIS FORM:** You may obtain the Entity ID Number on our website at www.sos.alabama.gov under the Government Records tab. Click on Business Entity Records, click on Entity Name, type the registered name of the entity in the appropriate box, and enter. The six (6) digit number containing a dash to the left of the name is the entity ID number (item 1 below). If you click on that number, you can view the Business Entity Details page to determine that you have located the correct entity. This verification step is strongly recommended -- refunds will not be made if you use the wrong number.

```
Alabama
Sec. Of State
Entity Change
937-710          F/C
Date  4/27/2016
              17:10
160428        2 Pg
File      $25.00
Ackn       $.00
Exp         $.00
Total
01/016    $25.00
```

**(For SOS Office Use Only)**

Mail two copies of this filing and the $25.00* fee to the Secretary of State, Business Services Division, PO Box 5616, Montgomery, Alabama, 36103-5616. You may pay by check, money order, or credit card. You may email to miscellaneous.filings@sos.alabama.gov or fax this filing to 334-240-3138 if you are paying with a credit card. Receipt of filings will only be acknowledge if the email method is used, we cannot search and acknowledge receipt of filings submitted via mail or fax. Your change will not be indexed if the credit card does not authorize and will be removed if the check is dishonored.

Item 3 is the information pertaining to the current registered agent and office location currently on file with the Secretary of State. Complete this for verification purposes. You may change the name of the agent, the street address of the registered office, and the mailing address of the registered office, or any one of the three (items 4, 5, and 6).

**This form must be typed or laser printed.**

1. Alabama Entity ID Number (Format: 000-000):_____937___710_____ **The change will not be processed without this number.**

2. The name of the entity as registered with the Secretary of State of Alabama:

   NCI GROUP, INC.
   _____

3. The name of the Registered Agent currently registered for this entity with the Secretary of State of Alabama: NATIONAL REGISTERED AGENTS INC
   _____

   Street (**No PO Boxes**) address of the Registered Office: 150 South Perry St.
   _____

   Montgomery, AL  36104
   _____ Mailing address of Registered Office (if different from street address): 150 South Perry St., Montgomery, AL  36104
   _____

Agent/Office Address Change – 3/2011                              Page 1 of 2

RECEIVED
DATE
APR 2 7 2016

SECRETARY OF STATE
OF ALABAMA

## CHANGE OF REGISTERED AGENT OR REGISTERED OFFICE BY ENTITY

4. Change the name of the Registered Agent (must be located in Alabama) for this entity to:

National Corporate Research, Ltd.                                     Alabama ID Number 908-205

The new registered agent must sign the consent to appointment on page two prior to filing.

5. Change the street (**No PO Boxes**) address in Alabama of the Registered Office to:_____

2094 Myrtlewood Drive, Montgomery, AL 36111

6. Change the mailing address of the Registered Office (if different from street address) to:_____

7. The entity certifies that the street address of the registered office and the street address of the registered agent's business are the same.

I, the undersigned, certify that any change specified in this document is authorized by the entity.

4\7\16
Date

Louis A. Walton, Vice President - Tax
Typed Name and Title of Signature for Entity Below

Signature of Person Authorized to Sign per 10A-1-4.01, *Alabama Code*

---

I, the undersigned, consent to appointment as registered agent for _____

ROBERTSON-CECO II CORPORATION _____ (entity name in blank).

04/08/2016
Date

Brandie Sullivan, Assistant Secretary
Typed Name of Agent Signature Below

Signature of Registered Agent

---

Expedited processing* is requested and the fee is included.  Please fax the copy of the filed change to (10-digit fax

number):___(     )_____ or email to:_____

**\*Acknowledgment Copy:** If you would like an acknowledgement copy of the filed document include a copy with your original filing (or if faxing or emailing we can charge you $3.00 for copies – check the box) along with a self-addressed envelope.  All copies are mailed standard USPS unless envelopes with special postage or overnight courier envelopes are included with the request.  Any overnight courier envelopes must have a completed airbill with the billing information completed and clearly marked "bill recipient." We do not return acknowledgement copies via fax or email unless expedited processing is requested (the fee is an additional $100.00 for processing within three business days after receipt of the filing).